**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

SAM AND COLBY ENTERPRISES LLC,

    PLAINTIFF,

V.

THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,

    DEFENDANTS.

CASE NO.: 2:26-CV-00091

**COMPLAINT**

Plaintiff, Sam and Colby Enterprises LLC ("SCE" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A (collectively, "Defendants"), which use at least the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants, in that Defendants conduct business in Indiana and this Judicial District, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Indiana and within this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the U.S., including Indiana, through the fully interactive, commercial Defendant Internet Stores. Defendants are committing tortious acts, engaging in interstate commerce, and wrongfully causing substantial injury in the State of Indiana.

1

**INTRODUCTION**

4.  This action has been filed to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable trademarks by selling and/or offering for sale unauthorized products in connection with Plaintiff's federally registered trademarks.

5.  Plaintiff, SCE, is the owner of the federally registered XPLR Trademarks, listed in the table below – true and correct copies of which are attached hereto as **Exhibit 1** (collectively, "XPLR Trademarks").

| XPLR TRADEMARKS | | | |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| 7727090 | **XPLR** | IC025: T-shirts, sweatshirts, socks, and headwear | Mar. 18, 2025 |
| 6036590 | | IC025: Clothing, namely, shirts, t-shirts, sweatshirts, sweatpants, leggings, knit face masks, socks, gloves; headwear; footwear | Apr. 21, 2020 |

6.  Plaintiff has filed, as **Exhibit 2** hereto, its Schedule A which details: (1) store names of the Defendants, (2) the online marketplace accounts for each Defendant found to be selling unauthorized products that infringe upon the XPLR Trademarks (hereinafter "Counterfeit Products"), (3) listing titles, and (4) images Defendants used to offer for sale and sell their Counterfeit Products.

7.  In an effort to deceptively profit from the XPLR Trademarks, Defendants utilize the Defendant Internet Stores, designed to give the impression that they are legitimate licensees or resellers of authentic products manufactured or authorized by SCE, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing Counterfeit Products.

8. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its trademarks, among others, as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

**THE PLAINTIFF**

9. Founded in 2015, SCE is a limited liability company with its primary offices in 930 S 4th St, Ste 209 #2644, Las Vegas, Nevada, 89101, United States.

10. SCE is owned by popular YouTube duo Samuel Golbach ("Sam") and Cole Brock ("Colby"). Sam and Colby began their entertainment journey on Vine, a short-form video hosting platform, where they gained attention for daring stunts and humorous content. In transition to YouTube, their focus shifted towards exploring abandoned places and conducting paranormal investigations.

11. Sam and Colby have built a massive online following with over 15 million subscribers on YouTube and millions more across other social media platforms including Instagram and Tik Tok. They have won many awards including Streamy Awards in 2019 and 2023 and a Teen Choice Award in 2019. They have been featured in Forbes and Billboard and on Access Hollywood and The Joe Rogan Experience.

12. Sam and Colby have a loyal fanbase known as the XPLR community. To strengthen their connection with fans, they launched XPLR merchandise. XPLR stands for "explore," embodying Sam and Colby's passion for discovering the unknown. Through their XPLR designs, they inspire fans to embrace adventure and push beyond their limits. XPLR merchandise includes clothing, accessories, headwear, and footwear (the "XPLR Products") which are distributed and sold to consumers throughout the United States and worldwide. As the XPLR brand has grown, so

has its designs and offerings, incorporating limited-edition drops, high-quality materials, and exclusive collaborations. The following are examples of genuine XPLR Products:



| AUTHENTIC PRODUCT EXAMPLES |
|---|

13.     Plaintiff primarily sells its XPLR Products on its own website, shopxplr.com/, where SCE does exclusive drops throughout the year, and at retail stores such as Zumiez and Hot Topic.

14.     XPLR Products include at least one of the registered XPLR Trademarks.

15.      Plaintiff owns the exclusive rights to develop, manufacture, distribute, license, sell, promote, and otherwise exploit goods and services of every kind and nature based upon or derived from the XPLR Trademarks throughout the world in perpetuity.

16.     The XPLR Trademarks are inherently distinctive, valid, subsisting, and in full force and effect. Plaintiff has used the XPLR Trademarks exclusively and continuously. The XPLR Trademarks qualify as famous marks under 15 U.S.C. §§ 1115(b). The trademark registrations constitute *prima facie* evidence of their validity and of SCE's exclusive right to use the XPLR Trademarks pursuant to 15 U.S.C. § 1057(b).

17.     SCE has invested significant time, energy, money, and resources into promoting XPLR Products, investing approximately one million dollars ($1,000,000) annually, on their marketing and promotion. In 2025, the success of XPLR Products was featured on Business Insider, a leading business news magazine, as XPLR Products generated approximately $20

million in revenue in 2024. As such, the recognition and goodwill associated with the XPLR brand is of incalculable and inestimable value to the Plaintiff.

18.     SCE has made efforts to protect its interests in and to the XPLR Trademarks. SCE and its licensees are the only businesses and/or individuals authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing or featuring the XPLR Trademarks.

19.     Plaintiff has not licensed or authorized Defendants to use the XPLR Trademarks, nor has it authorized the Defendants as licensors or resellers of XPLR Products.

## THE DEFENDANTS

20.     Defendants are individuals and/or business entities whose true identities are unknown and often concealed with unverified, incomplete, or false business names, addresses, and contact information. Upon information and belief, all Defendants reside in foreign jurisdictions.

21.     Defendants operate fully interactive commercial websites and online marketplace accounts utilizing, at least, the following marketplace platforms: Alibaba Group Holding. Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon, Inc. ("Amazon"), eBay, Inc. ("eBay"), SHEIN.com ("SHEIN"), WhaleCo, Inc. d/b/a Temu ("Temu"), Walmart, Inc. ("Walmart"), and ContextLogic d/b/a Wish.com ("Wish") (collectively, "Online Marketplaces").

22.     Defendant Internet Stores are using and/or has used at least one of the XPLR Trademarks, without authorization to do so, in connection with offering for sale, selling, marketing, and distributing Counterfeit Products in direct competition with the Plaintiff, as of March 5, 2026, the date of filing of this Complaint.

23.     Upon information and belief, counterfeiters, such as Defendants, operate numerous additional online marketplace accounts and/or ecommerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

24.    On information and belief, Defendants are using the XPLR Trademarks without authorization in their product listing titles, product descriptions, as keywords in the metadata of the Defendant Internet Stores, and on the physical products themselves, in connection with Counterfeit Products. An example of such use is shown in the table below.

| COUNTERFEIT PRODUCT | COUNTERFEIT PRODUCT LISTING |
|---|---|
|  | |

25.    Defendants' use of the XPLR Trademarks is identical in appearance, and done so in a manner, which suggests to the consumer, that the source or origin of the Counterfeit Products is the Plaintiff.

26.    Defendants' Counterfeit Products are intentionally designed to look identical or similar to genuine XPLR Products.

27.    Both Plaintiff and Defendants advertise and sell their products using XPLR Trademarks, in the same area and in the same manner, via the Internet, and during the same timeframe.

28.    Defendants' unlawful use of the XPLR Trademarks, and unfair competition, draw would-be consumers of Plaintiff's authentic XPLR Products away from Plaintiff and to the Defendant Internet Stores.

29.    Potential consumers purchasing XPLR Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine XPLR Products from Counterfeit Products.

30.    Consumers who intend to purchase authentic XPLR Products are purchasing the Counterfeit Products and are receiving inauthentic, low-quality items which consumers associate with the Plaintiff.

31.    Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and e-commerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

32.    As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

33.    On information and belief, Defendants operate in an organized manner, often monitor trademark infringement litigation alert websites, utilize online chat platforms and groups, and use collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

34.    The Defendant Internet Stores include common features such as use of the same and/or similar listing titles and naming conventions, identically or similarly priced products and volume discounts, and the use of the same text and images. Similarly, Defendants are selling the same types of Counterfeit Products — *i.e.*, low-quality clothing and accessories— if not identical Counterfeit Products.

35.    Defendants often conceal their identities when registering their Defendant Internet Stores by using fictitious names and physical addresses which are incomplete, contain randomly typed letters, or fail to include cities and other relevant information. On information and belief, Defendants regularly create multiple online marketplace accounts on various platforms using the alias connected with their Defendant Internet Stores along with other unknown fictitious names and addresses. Defendants use these and other common tactics to hide their true identities and locations, obfuscate the full scope and interworking of their counterfeiting operation, and to avoid being shut down

---

[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.
[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal.

36.     Further, counterfeiters, like Defendants, typically operate multiple payment processor and merchant accounts associated with their Defendant Internet Stores through online marketplaces and third party payment processors including, but not limited to, PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe, Inc. ("Stripe"), Alipay.com Co., Ltd. ("Alipay"), and Amazon Payments, Inc. ("Amazon Payments") (collectively, the "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts.

37.     Defendants, without any authorization or license, have knowingly and willfully infringed the XPLR Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Indiana.

38.     In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have caused, and will continue to cause, irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the XPLR Trademarks; created, manufactured, sold, and/or offered to sell Counterfeit Products; used the XPLR Trademarks in an unauthorized manner in order to mislead and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of SCE.

39.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. § 1114, *et seq.*)**

40.     Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-39 as if fully set forth herein.

41.     Plaintiff is the owner of the XPLR Trademarks which have significant value.

42. Defendants have used the XPLR Trademarks without authorization in commerce in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products.

43. Without the authorization or consent of SCE, and with knowledge of SCE's well-known ownership rights in its XPLR Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the XPLR Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the XPLR Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

44. Defendants have manufactured, imported, advertised, promoted, distributed, displayed, offered for sale, and/or sold Counterfeit Products to the purchasing public in direct competition with SCE and the XPLR Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the XPLR Trademarks through their participation in such activities.

45. Defendants have applied reproductions, counterfeits, copies, and colorable imitations of the XPLR Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, advertising, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by

10

Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

46.    Defendants' unauthorized use of the XPLR Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the XPLR Trademarks.

47.    Defendants' actions constitute counterfeiting of the XPLR Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

48.    Defendants' intentional use of the XPLR Trademarks without the consent or authorization of Plaintiff constitutes intentional infringement of the XPLR Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

49.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to SCE, its business, its reputation, and its valuable rights in and to the XPLR Trademarks and the goodwill associated therewith, in an amount as yet unknown.

50.    SCE has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to SCE and its valuable XPLR Trademarks.

51.    Based on Defendants' actions as alleged herein, SCE is entitled to injunctive relief, damages for the irreparable harm that it has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory

11

damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION**
**(15 U.S.C. § 1125, *et seq.*)**

52.    Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-39 as if fully set forth herein.

53.    Plaintiff, as the owner of all right, title, and interest in and to the XPLR Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125.

54.    Defendants' manufacturing, distribution, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff.

55.    By using the XPLR Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

56.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

57.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of SCE, its XPLR Products, and XPLR Trademarks.

12

58.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to SCE by depriving Plaintiff of sales of its XPLR Products and by depriving SCE of the value of its XPLR Trademarks as commercial assets in an amount as yet unknown.

59.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

   a. using the XPLR Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner, in connection with the manufacturing, distribution, marketing, advertising, importing, offering for sale, or sale of any product, that is not an authorized XPLR Product or is not authorized by Plaintiff to be sold in connection with the XPLR Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff, nor approved by Plaintiff, in association with its XPLR Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

13

d.  shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff and which bear the XPLR Trademarks; and,

e.  further infringing the XPLR Trademarks and damaging Plaintiff's goodwill.

2)  That those in privity with Defendants, including any Online Marketplaces and Payment Processors, and any related entities such as web hosts for the Defendant Internet Stores and domain name registrars, shall disable and cease displaying all product listings through which Defendants engage in the sale of Counterfeit Products.

3)  That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4)  For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114;

5)  That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6)  For Judgment in favor of Plaintiff against Defendants that it has: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7)  That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8)  Any and all other relief that this Court deems just and proper.

Dated: March 5, 2026

Respectfully submitted,
*/s/ Gouthami V. Tufts*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
g.tufts@scip.law

***ATTORNEYS FOR PLAINTIFF***

15